William Lee PERKINS, Appellant,

v.

**DOYON UNIVERSAL SERVICES, LLC, Appellee.**

No. S–11920.

Supreme Court of Alaska.

Dec. 22, 2006.

---

**134.** 521 U.S. at 265, 287–88, 117 S.Ct. 2028.

**135.** *Id.* at 281–88, 117 S.Ct. 2028.

William Perkins, pro se, Anchorage.

William F. Mede and Norman P. Resnick, Turner & Mede, P.C., Anchorage for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

William Perkins was a minority applicant for two employment positions, animal enforcement officer and kennel technician, at Doyon Universal Services, LLC. He sued Doyon, claiming racial discrimination, when it filled at least one of the positions with a non-minority applicant. Because the record demonstrates that Doyon had legitimate reasons for preferring the two successful applicants and because Perkins raised no genuine issue of material fact, we hold that the superior court did not err in granting summary judgment to Doyon.

## II. FACTS AND PROCEEDINGS

Doyon Universal Services operates an animal care center for the Municipality of Anchorage. In October 2001 William Perkins applied for employment at the center in two different positions, animal enforcement officer and kennel technician. The application form contained an "optional" section requesting the applicant's ethnic group; Perkins checked the box entitled "Black."

Perkins was not interviewed for either position. Doyon hired an internal candidate for the animal enforcement officer position. It hired a non-minority candidate with prior kennel experience for the kennel technician position.

Perkins filed a complaint with the Alaska State Commission for Human Rights, claiming Doyon had discriminated against him on the basis of race when it failed to hire him

for either position. In October 2003 the commission issued a determination in which it concluded that there was substantial evidence to support Perkins's allegation that Doyon "discriminated against him based on his race when it failed to hire him for an available kennel technician position." The commission therefore proposed conciliation. (The commission appears to have concluded that no substantial evidence supported a discrimination claim as to the animal enforcement officer position.) Conciliation attempts were apparently unsuccessful. In January 2004 Perkins sued Doyon in the superior court, alleging discrimination. After Perkins filed suit, the commission issued an order holding its case in abeyance.

Doyon moved for complete summary judgment. Doyon's motion papers argued that the animal enforcement officer position had been filled internally and thus was "not at issue in this case." As to the kennel technician position, Doyon claimed that it was entitled to summary judgment because Perkins's "qualifications were not clearly superior to the qualifications of the applicant selected for the job," and other, non-minority candidates with qualifications similar to those of Perkins were not interviewed or hired. In response, Perkins filed a one paragraph unsworn document entitled "Remarks About Deposition" that mostly discussed collateral issues. He did not contend that his claim concerned the animal enforcement officer position. By order signed March 17, 2005, the superior court granted summary judgment to Doyon on all of Perkins's claims. The court entered final judgment for Doyon in April 2005.

Perkins appeals.

## III. DISCUSSION

### A. Standard of Review

We review grants of summary judgment de novo to determine whether a genuine issue of material fact exists and whether the prevailing party is entitled to judgment as a matter of law, drawing all reasonable factual inferences in favor of the non-prevail-

ing party.[1]

## B. The Record Contains No Evidence that the Reasons Doyon Gives for Not Hiring Perkins Were Pretextual.

Perkins has not articulated precisely what legal error he thinks the superior court committed.[2] He asserts, without elaboration, that Doyon discriminated against him and violated his constitutional rights; that he did not receive a fair trial; that the hiring supervisor was "unethical"; that Doyon "basically" told him he can never apply for a position at the center; that evidence was irrelevant to his case; that defense counsel was "openly" trying to ruin Perkins's character; and that defense counsel did not prove Doyon "was not guilty." We assume that Perkins is basically contending that it was error to enter summary judgment against him. In considering his appeal we therefore examine the record to determine whether Doyon was entitled to summary judgment as a matter of law given the facts and permissible inferences.

▪ Under Alaska law, it is unlawful "to refuse employment to a person, or to bar a person from employment" because of the person's race, among other things.[3] We apply the *McDonnell Douglas Corp. v. Green*[4] burden-shifting test to allegations of employment discrimination under AS 18.80.220.[5]

▪ To establish a prima facie case of illegal discrimination under AS 18.80.220 when there is no direct evidence of discrimination the plaintiff must belong to a class protected by the statute, and must have applied and been rejected for a job despite being qualified for an open position.[6] Once the plaintiff establishes a prima facie case, the burden shifts to the employer to show that there was a legitimate reason why the applicant was not hired.[7] The employer "is required at the second step of the analysis to rebut the presumption by stating the permissible, objective criteria which led to the decision."[8] If the employer articulates a permissible reason to explain why the minority applicant was not hired, the burden shifts back to the plaintiff to produce some evidence indicating that the articulated reason is a pretext.[9] The plaintiff's burden requires him to offer something more than "unsupported assumptions and speculation."[10] Summary judgment is appropriate when a plaintiff presents "nothing more than [his] own subjective belief that the employer's asserted ground" is a pretext.[11]

▪ There is no triable claim as to the position of animal enforcement officer, because we conclude that the record contains no indication of a genuine issue of fact material to that claim.[12] The human rights com-

---

1. *Hammond v. State, Dep't of Transp. & Pub. Facilities*, 107 P.3d 871, 874 (Alaska 2005).

2. Appellant's pro se opening brief is one page long. It contains no citations to the appellate excerpt or record. It describes no circumstances that, if supported by inferences reasonably derived from the record, might have demonstrated that summary judgment was entered erroneously. Nothing in the brief justifies a conclusion that the grounds for Doyon's employment decisions were pretextual. Our focus is therefore on the record.

3. AS 18.80.220(a)(1).

4. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

5. *Alaska State Comm'n for Human Rights v. Yellow Cab*, 611 P.2d 487, 490 (Alaska 1980).

6. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817).

7. *Id.* at 492.

8. *See Haroldsen v. Omni Enters., Inc.*, 901 P.2d 426, 431 (Alaska 1995) (applying *Yellow Cab* framework in case alleging wrongful firing).

9. *Mahan v. Arctic Catering, Inc.*, 133 P.3d 655, 660 (Alaska 2006).

10. *Id.* at 661 (citing *French v. Jadon, Inc.*, 911 P.2d 20, 25 (Alaska 1996)).

11. *Id.*

12. We address this issue only summarily given the probability the pro se appellant is not raising it on appeal. Although he had complained to the human rights commission about not being hired for the animal enforcement position, his superior court suit appears to have focused on the kennel technician position. When Doyon asked him at deposition in the superior court proceeding if he was suing over the enforcement officer position or just the kennel technician position, Perkins

mission concluded that the company had a preference for internal candidates and that an internal candidate was hired. The record indicates that Doyon only interviewed internal candidates for the position of animal enforcement officer. Preferring internal candidates is a legitimate and non-discriminatory reason for Doyon's action with respect to this position.[13] Given Doyon's preference and the absence of any evidence that Doyon deviated from that preference in filling this position, and given the absence of any direct evidence of discrimination and any permissible inference of fact supporting a claim of pretext, we conclude that no genuine issue of material fact precluded summary judgment for Doyon as to the animal enforcement officer position.

■ Appellant also fails to make out a triable claim for the kennel technician position because Doyon advanced legitimate, non-discriminatory reasons for not hiring Perkins, and he has not produced any evidence that Doyon's employment criteria were pretextual. Doyon recognizes that Perkins met his threshold prima facie burden under the *Yellow Cab* three-part test. Thus, under the three-part framework, the burden shifted to Doyon to articulate a legitimate, non-discriminatory reason for its employment decision.[14] Thirty-seven people had applied for that position, according to Debbie Cather, the person responsible for hiring at Doyon. The kennel technician advertisement indicated that the job involved "caring for animals, [and] making sure they have a clean kennel." Perkins was not interviewed for the position. Cather hired another applicant for the kennel technician position. Doyon admits on appeal and admitted below that the person hired for that position was a non-minority.

Doyon's primary rationale for preferring the person hired over Perkins was that the successful candidate's "experience was directly in line with the duties of a kennel tech at Anchorage Animal Control Center." The résumé of the man hired indicated that he had worked at a kennel from 1990 to 1998 performing building maintenance and caring for dogs. Cather said she hired him "primarily because of his eight years of experience working at Coshok's Canine Castle." In comparison, Perkins's résumé listed his experience as five years and two months employment as a laboratory animal technician. This in itself is a legitimate non-discriminatory reason for Doyon's hiring decision, and it is sufficient to rebut the presumption of discrimination.[15]

Cather also explained that she regarded it as a negative that Perkins's prior work experience had been in a research lab. Perkins's application indicated that he had experience "[b]leeding monkeys" in a research lab. Cather, a certified and licensed veterinary technician, stated that "some research facilities do not take humane care of the animals." It was not unreasonable for Cather to interpret Perkins's lab experience as not reflecting the type of care that would be required in a facility that primarily houses companion animals. Doyon, by articulating legitimate reasons for its hiring decision, therefore met its second-step burden of rebutting the presumption of discrimination.[16] The burden then shifted back to Perkins to produce some evidence supporting a claim of pretext.

■ On appeal Perkins has not advanced any evidence or logical argument casting doubt on Cather's explanation for her hiring decision. In reviewing the grant of summary judgment we examine the record to see if there was a genuine dispute of material fact as to whether Doyon's reasons for not hiring Perkins were pretextual.

indicated that he was only suing over the kennel technician position. Perkins's appellate brief does not mention either position. We note that the commission appears to have silently concluded that no substantial evidence supported Perkins's claim as to the animal enforcement officer position; we also note that Perkins has not alleged that a non-minority was hired for the position.

13. *See Summers v. Harvard Univ.*, 397 F.Supp.2d 166, 173 (D.Mass.2005) (holding university's as-

sertions candidate "was more qualified and that it preferred to hire an internal candidate" satisfied university's burden of providing a non-discriminatory reason for its conduct).

14. *Yellow Cab*, 611 P.2d at 490.

15. *See id.* at 492.

16. *See id.*

The record, viewed in the light most favorable to Perkins, identified two factors which arguably decreased the suitability of the successful kennel technician applicant or even rendered him unqualified per Doyon's own qualifications. The successful applicant wrote on his application, in response to the question whether he had ever been convicted of a crime, "D. V. Time Served." His application also indicated that he did not have a driver's license.

The human rights commission reported that Doyon's contract with the municipality imposes "restrictions on hiring convicted felons." The record indicates that the successful applicant had pleaded no contest to a misdemeanor charge of violating a protective order and had served no time in jail but served one year of probation.

Perkins originally believed that the person hired was a felon, but conceded at his deposition that if the applicant was not a felon "[t]hen he deserved that job." Assuming that felons are ineligible to work for Doyon, the successful applicant was not ineligible for hire because the crime was in fact only a misdemeanor.[17] Cather stated in her affidavit that she made no attempt to determine whether the domestic violence conviction was a felony or a misdemeanor. Although her failure to determine whether the crime might be a felony is potentially problematic, Cather offered a plausible explanation that she did not recall seeing the reference to criminal history on his application and did not then even know what "D.V. Time Served" meant. She stated that she had since learned D.V. refers to domestic violence.

The application form asks if the applicant has a driver's license, but the record does not indicate, and Perkins has not suggested, any reason why a license is relevant to the kennel technician position. We assume that this question is on the Doyon application form because some positions (such as the animal enforcement officer position) involve driving. The kennel technician position involves cleaning cages and caring for animals, and there is no indication it involves driving. Cather ex-

plained that the successful applicant's prior work "was directly in line with the duties" he would perform for Doyon. Her description of his prior work did not indicate driving was one of the duties at his prior employment, or would be one of his duties as kennel technician.

There is no indication that a misdemeanor conviction or the lack of a driver's license would have diminished an applicant's suitability, or rendered the applicant ineligible for the kennel technician position. The fact that Doyon hired someone with a prior misdemeanor conviction and without a driver's license does not imply discrimination against Perkins and there was no genuine dispute of material fact with regard to the criminal record or driver's license.

Perkins therefore did not meet "the burden of producing admissible evidence sufficient to raise a genuine issue of fact supporting [his] theory that [Doyon's] reasons were merely a pretext."[18] And our independent review of the record has failed to uncover any evidence permissibly giving rise to a reasonable inference that Doyon's articulated reasons are pretextual.

## IV. CONCLUSION

For these reasons the judgment of the superior court is AFFIRMED.

---

17. AS 11.56.740 classifies violating a protective order as a class A misdemeanor.

18. *Mahan,* 133 P.3d at 661 (citing *McGlothlin v. Municipality of Anchorage,* 991 P.2d 1273, 1277 (Alaska 1999)).