**Sue L. GRUNDBERG, Appellant,**

v.

**ALASKA STATE COMMISSION FOR HUMAN RIGHTS, Appellee.**

No. S–13866.

Supreme Court of Alaska.

May 18, 2012.

Rehearing Denied July 17, 2012.

David R. Edgren, Edgren Law Offices, LLC, Anchorage, for Appellant.

William E. Milks, Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

A 58–year–old Asian–American woman alleged that she was discriminated against when her employer, the Alaska Department of Transportation and Public Facilities, denied her a promotion to the position of Engineer II, and instead hired "a younger less qualified" Caucasian man for the position. She filed a complaint with the State Commission for Human Rights, which initiated an administrative investigation of the hiring decision. At the conclusion of the investigation, the Commission issued a written determination that the complainant had failed to produce substantial evidence of unlawful discrimination by the Department. On appeal, the superior court affirmed the agency determination. Because the complainant produced evidence sufficient to create an inference that the Department's alleged reason for not hiring her is a pretext for discrimination, we reverse.

## II. FACTS AND PROCEEDINGS

### A. Facts

Sue Grundberg is an Asian–American woman who was born in 1949. In 1984 she began working as an Engineering Assistant in the Traffic and Safety Division of the Alaska Department of Transportation and Public Facilities (the Department). About four-and-a-half years later, she secured a license as an Alaska Registered Professional Engineer. Grundberg continued to work as an Engineering Assistant in the Department for about ten years after obtaining her professional license. In 1999 Grundberg was promoted to an Engineer I position in the Measurement Standards, Commercial Vehicle Enforcement Division of the Department of Transportation and Public Facilities.[1]

---

1. According to Grundberg's brief, she was promoted to the Engineer I job only after filing a grievance through her union, the Alaska State Employees Association, Local 52. Direct evidence of the 1999 grievance resolution, which appears in the trial court record and excerpt, does not appear in the agency record. In addition, the State argues that we should not consider this information because the parties agreed

that the grievance resolution was "entered into solely to address the particular circumstances of [the 1999] dispute and does not establish any practice or precedent between the parties ... [and] shall not be referred to in any grievance, arbitration, hearing, complaint, dispute, or other matter...." We do not draw any inferences from the 1999 letter.

Grundberg asserts that she is currently the only female engineer in her position in her unit. She has tried several times without success to move up to an Engineer II position or to transfer to another division.

On April 17, 2007, the Department began recruiting to fill an Engineer/Architect II position in the Central Region Design and Construction Division. The recruitment bulletin described the job as "a first level supervisor, overseeing the work of six (6) engineers and technicians providing traffic analysis and design." The bulletin listed two minimum qualifications: (1) registration as a professional engineer or architect, and (2) one year of professional experience as an Engineer/Architect I or Engineering Associate with the State of Alaska, or the equivalent. In addition to the minimum qualifications, the applicants were presented with a list of questions about desired qualifications.

Grundberg met the minimum qualifications and submitted an application. Grundberg answered "yes" to seven of the eight "desired qualification" questions. She answered "no" to the question that concerned experience programming highway electronic devices, which the Department argues was a particularly important qualification for the job. Grundberg secured an interview, which took place in May 2007.

The interviewers' notes suggest that Grundberg brought to the panel's attention technical memos she had drafted as well as letters she wrote to stakeholders outside the Department. The interviewers noted that Grundberg had limited experience with project specifications. Through the interview and application materials, Grundberg highlighted the magnitude of projects she had worked on—deals affecting 3,000 clients and a $25 million letter of credit. During the interview, Grundberg offered an example of her supervisory experience and emphasized her ability to work with others and build relationships. The interview notes suggest that Grundberg mentioned to the panel her Asian background and willingness to work with people of all backgrounds. In response

to interview questions, Grundberg appears to have mentioned that she had 22 years of experience in the Department, including 15 years working in traffic and safety, and that she believed experience was an important factor to consider in hiring.

The interview panel was made up of three Department of Transportation employees: (1) Judy Dougherty[2] (Engineer IV), (2) Cindy Ferguson (Engineer III), and (3) Ken Morton (Engineer III). Cindy Ferguson, who would directly supervise the successful candidate for the vacant Engineer II position, was the hiring manager on this panel. The record suggests that she prepared a ranking and scoring sheet for the interviews, which the panel agreed upon before the interviews took place. In her own position Ferguson reported directly to panel member Judy Dougherty, who was the Chief of the Highway Design section. Although Ferguson had not spoken with Grundberg before the May 11 interview, both of the other panel members had worked with Grundberg in the past. Morton was listed as a reference for Grundberg, presumably because he supervised the traffic design unit between 1997 and 1999.

In addition to Grundberg, two other Department of Transportation employees applied for the Engineer II position.[3] Both are white males, respectively three and thirteen years younger than Grundberg. The record suggests that both answered "yes" to all eight of the desired qualification questions. In the interview scoring process, the successful applicant ranked highest with 545.6 points; Grundberg ranked lowest with 253 points. The successful applicant, who received his engineering license in 2004, had previously worked with Ferguson and Dougherty. The panel unanimously decided to offer him the Engineer II position. According to the panel members, they scored each candidate separately and then met to discuss the scoring.

Ferguson asserted that selection of the candidate was based "largely," but not exclu-

2. Although the spelling "Doherty" is more prevalent in the record and briefs, we have adopted the spelling "Dougherty," which appears to be how Dougherty spelled her own name on her interview notes.

3. The applications and interview materials of these two candidates are not before this court. They were withheld from the agency record when it was transmitted to the superior court.

sively, on the interview scores. According to Ferguson, the decision not to hire Grundberg reflected the facts that, unlike the successful applicant, Grundberg had not produced bid-ready plan sets, had not been the primary author of a Design Study Report, had worked only as an Engineering Assistant (not as an Engineer) in the design section, and could not answer "yes" to all the desired qualification questions. She added that during the successful applicant's interview, he related his current design experience to the position, made good comments, and had many good ideas. When asked about what the interview panel was looking for in a candidate, Ferguson noted, "this was a position that manages the technical engineering staff that deals with intersections. We were looking for someone who had done this sort of design[ ] before, had done ready projects and was familiar with the ready projects."

In response to the same question, Judy Dougherty noted, "[w]e wanted this person to be able to independently lead a group of engineers in traffic design, to train people in their squad, traffic operation design, all aspects of signal and lighting and be a support for all the people." When prompted, Dougherty confirmed that being able to answer "yes" to the desired qualification questions on the application and authoring a design study report were key factors in the hiring decision. Dougherty added that Grundberg was not very productive and "[w]e were never able to give her responsible charge for a lot of work; her work [as an Engineering Assistant] required a lot of review." Morton offered the general explanation that Grundberg "did not have the best experience and skill set for the position." The panel members have asserted that race, age, and gender played no role in the hiring process and that they did not know who would be hired prior to the interview. Ferguson and Dougherty also noted that years of experience was not an important selection criterion.

## B. Proceedings

Shortly after the Engineer II position was offered to the successful applicant, Grundberg filed a complaint with the Alaska State Commission for Human Rights (the Commission) with a request that it also be filed with the U.S. Equal Employment Opportunity Commission.[4] Grundberg's complaint alleges:

> [The State of Alaska, Department of Transportation] has discriminated against me on the basis of my race, Asian, my sex, female, and my age, 58.... On May 1, 2007, I applied for the position of Engineer II with the [Department]. Respondent failed to hire me for this position and instead promoted a younger less qualified Caucasian male.

In August 2007, Grundberg's complaint was assigned to a Commission investigator. On behalf of the employer, the State Department of Administration's Division of Personnel and Labor Relations prepared a response to the complaint and provided documentation of the hiring process to the investigator. The response, which was sent to the Commission in December 2007, asserts, "Ms. Grundberg's race, gender, and age played no role in the hiring decision."[5] The investigator informed Grundberg of the employer's position and requested any response, including the names of witnesses, by March 20, 2008.

Grundberg responded with a letter dated March 19, 2008. Grundberg's letter identified other adverse employment actions she had experienced: It stated that between 2000 and 2007, Grundberg had interviewed unsuccessfully for "many positions," including some that "were vacant and posted for six months without being filled." Grundberg further noted that in 2007 she had "interviewed for 7 engineer positions within DOT that resulted in 4 positions being filled with

4. Grundberg amended the complaint on July 11, 2007, to add claims under Title VII of the Civil Rights Act of 1964. It appears that, pursuant to her request, the Commission forwarded her complaints to the Equal Employment Opportunity Commission. Pursuant to a worksharing agreement, the State Commission undertook the initial investigation. It is not clear from the record whether the Equal Employment Opportunity Commission will independently investigate the situation or how that would be decided under the worksharing agreement.

5. This response arrived more than three months after its requested due date of August 17, 2007. The record indicates that the investigator contacted the employer by phone to request its overdue position statement.

younger, less experienced Caucasian males."[6] Grundberg identified the successful candidates for three of these positions and provided the names of 13 other Department of Transportation engineers with some information about their credentials and relative years of experience.

Based on her employment history and failure to be promoted to the Engineer II position, Grundberg concluded, "[t]hey don't have the willingness to train me and wouldn't provide me any opportunity to advance my career." Grundberg noted that the applicant who secured the presently disputed Engineer II position was entrusted with valuable experience early on: Within four years of obtaining an Engineering license, he was the principal author of a design study report, a responsibility that had not yet been entrusted to Grundberg 18 years after obtaining a license. Grundberg further compared her employment history with his, noting that "[i]t took me 10 years after I received my license to land an Engineer I(E I) position, yet DOT wasted no time to promote [the successful applicant] . . . to Engineer I as soon as he got his license."

Grundberg suggested alternative explanations for the hiring decision at issue in this case. According to Grundberg:

Ms. Dougherty had already made up her mind to promote [the successful applicant] prior to my interview. She wasn't interested during the interview; she answered her private cell phone during the interview. Both Mr. Morton and Ms. Ferguson work for Ms. Dougherty. Neither will jeopardize their job by voting against the boss'[s] decision[.]

She further noted her qualifications and the magnitude of her responsibilities. Grundberg suggested that "desired qualification"

question two, which concerned programming highway electronic devices, was not essential to the job and was used to exclude her application for illegitimate reasons. Grundberg also provided the name of a Department employee who, according to Grundberg, was willing to be interviewed and would corroborate her allegations.

About a month after the investigator received Grundberg's submission, the investigator set up interviews with the three members of the hiring panel. The interviews took place in early May 2008. The investigator asked Ferguson, Dougherty, and Morton about the reasons they decided to hire the successful applicant and the reasons they had decided not to hire Grundberg. The investigator asked specifically about the roles race, age, and gender played in the hiring process; whether length of experience was a decisive factor in the hiring decision; and if the panel members knew who would be hired prior to the interviews. The panelists denied that any of these factors played a significant role in the hiring. The investigator also asked Ferguson (not Dougherty) about answering her cell phone during Grundberg's interview, and Ferguson denied doing so.

The record suggests that the investigator was prepared to conclude the investigation about two weeks after conducting these interviews.[7] After several attempts, the investigator was able to reach Grundberg and conduct an exit interview. The investigator informed Grundberg that she had not found any evidence of discrimination. Grundberg insisted that the hiring decision was not based on qualifications and that the Department had a history of denying her employment opportunities. The investigator informed Grundberg of her right to appeal once the determination was finalized. On

---

6. She provided further details about (1) an Engineer I position for which she interviewed in April 2007; (2) the May 11, 2007, interview for the Engineer II position at issue in this case; (3) another Engineer II position for which Grundberg interviewed in late May 2007; and (4) two other interviews for Engineer II positions that took place in the fall of 2007, after Grundberg had filed a complaint with the State Commission. She did not provide further details about two of the seven interviews mentioned; it is not clear what other positions she may have interviewed for.

7. The record suggests that the investigation consisted of (1) reviewing the letters and attachments submitted by the parties and (2) conducting interviews with Grundberg and the interview panelists, in addition to necessary administrative tasks and record-keeping. If the investigator attempted to interview the individual identified in Grundberg's submission, we have found no indication of it in the record. The investigative plan has been withheld from the record.

May 21, 2008, the Commission closed its investigation of Grundberg's complaint and issued its formal determination that Grundberg's allegations were not supported by substantial evidence.

Grundberg appealed to the superior court. Grundberg's opening brief identified Alaska's burden-shifting framework for evaluating employment discrimination claims and clarified how the information that Grundberg had provided to the Commission on March 19, 2008, was relevant under this framework. The Commission responded, and Grundberg filed a reply. The superior court affirmed the Commission's determination on the ground that Grundberg had not "presented evidence of a genuine dispute." This appeal followed.

## III. STANDARD OF REVIEW

■■■ Questions of law where no agency expertise is involved are reviewed under the substitution of judgment test.[8] In an appeal originating with an administrative agency, we do not look to the superior court's decision when that court acts as an intermediate court of appeal,[9] instead directly reviewing the agency's decision.[10] A determination that a party failed to produce substantial evidence of discrimination is a question of law to which we apply our independent judgment.[11]

## IV. DISCUSSION

Alaska Statute 18.80.220 bars race-based, sex-based, and age-based discrimination in hiring, promotion, compensation and other terms, conditions or privileges of employment. This provision implements the anti-

discrimination mandate of Alaska's Constitution.[12] Its language—making it "unlawful" for an employer to take employment actions "because of" race, sex, and age—echoes federal anti-discrimination law.[13] In interpreting AS 18.80.220, we have adopted the three-step burden-shifting framework that is used to evaluate federal employment discrimination claims.[14] The parties agree that Alaska's three-step burden-shifting inquiry governs this case, and that the first and second steps were met, but they disagree about its application in the third step.

Grundberg contends that the Department's hiring decision was the product of discriminatory intent and that she produced evidence sufficient to overcome the Department's reasons for its decision. Grundberg supports her argument with the evidence she presented to the Commission in her letter of March 19, 2008, which alleged that she had experienced a history of adverse employment decisions; that the Department was more willing to make employment opportunities available to other employees; that the qualifications for the Engineer II position were artificially inflated to exclude her; and that the decision not to hire her was strongly influenced by one member of the hiring panel. With respect to each allegation of discriminatory intent, Grundberg argues that the Commission has not demonstrated any analysis or consideration. According to Grundberg, the evidence she produced should have prompted the Commission to investigate Department hiring further. She argues that, if the Commission had completed a thorough and inde-

**8.** *Villaflores v. Alaska State Comm'n for Human Rights*, 175 P.3d 1275, 1277 (Alaska 2008) (quoting *Villaflores v. Alaska State Comm'n for Human Rights*, 170 P.3d 663, 665 (Alaska 2007)).

**9.** *Id.* (citing *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987)).

**10.** *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002).

**11.** *Button v. Haines Borough*, 208 P.3d 194, 200 (Alaska 2009); *Leigh v. Seekins Ford*, 136 P.3d 214, 216 (Alaska 2006).

**12.** Article 1, section 3 of the Alaska Constitution provides: "No person is to be denied the enjoyment of any civil or political right because of

race, color, creed, sex, or national origin. The legislature shall implement this section."

**13.** *Compare* AS 18.80.220, *with* 42 U.S.C. § 2000e–2, *and* 29 U.S.C. § 623.

**14.** *State, Dep't of Fish & Game, Sport Fish Div. v. Meyer*, 906 P.2d 1365, 1374 (Alaska 1995) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (this three-step framework provides: (1) the employee alleging discrimination must introduce evidence raising an inference of employer discriminatory intent; (2) the employer must then articulate a legitimate, non-discriminatory reason, for the treatment; and (3) the employee must present evidence suggesting the employer's explanation is pretextual); *Thomas v. Anchorage Tel. Util.*, 741 P.2d 618, 622 (Alaska 1987)).

pendent investigation, it would have been compelled to issue a determination in her favor.

■ The Commission defends its conclusion that Grundberg failed to produce substantial evidence of discrimination and its decision to close the investigation shortly after interviewing the members of the hiring panel. The Commission insists that further investigation was not necessary because Grundberg produced no objective evidence of unlawful hiring. The Commission points to a number of legitimate explanations for the employer's hiring decision, including Grundberg's low score on the interviews, the remoteness of her experience in the Design section, the relative insignificance of "years of experience" in the hiring process, and the successful applicant's familiarity with Design section projects.

■ In the first stage of the burden-shifting analysis, the employee claiming discrimination must introduce evidence that raises an inference that an unfavorable employment decision resulted from the employer's discriminatory intent.[15] The parties agree that Grundberg, an Asian–American female, met this initial burden by providing evidence that a younger, white male was hired to the Engineer II position for which she met the minimum qualifications; that she interviewed for the position; and that she was not selected.

■ The burden then shifts, in the second stage, to the employer to articulate and provide evidence of a legitimate, non-discriminatory reason for its action.[16] The parties agree that the State met this burden by providing evidence that the successful applicant had qualifications—such as experience programming highway electronic devices and familiarity with recent Design projects—that Grundberg was missing.

■ In the third stage of the analysis, the burden shifts back to the employee to rebut the employer's alleged non-discriminatory reason.[17] The employee must produce substantial evidence sufficient to support an inference that the employer was motivated by discriminatory reasons, rather than its asserted non-discriminatory justification.[18] The employee can meet this burden by showing that the employer's explanation is pretextual.[19] At this stage of the analysis, we ask whether Grundberg's March 19, 2008, letter could raise "sufficient doubts regarding the employer's stated justifications to permit a reasonable ... infer[ence] that the reasons given are pretextual."[20]

■ The Commission faced the same question in this case. The burden-shifting framework governs the Commission's investigation of discrimination complaints and its determinations of substantial evidence.[21] The burden of producing substantial evidence of discrimination before the Commission "is less than the burden required to prevail on the merits" of an employment discrimination claim.[22] We have made clear that the Commission should not "attempt to determine at the investigative stage whether the non-discriminatory reasons proffered by the employer are legitimate."[23] Instead, the Commission must determine whether there is a reasonable possibility that discriminatory reasons motivated the employer's decision.

15. *Thomas*, 741 P.2d at 622 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Haroldsen v. Omni Enter., Inc.*, 901 P.2d 426, 430 (Alaska 1995); *Strand v. Petersburg Pub. Sch.*, 659 P.2d 1218, 1222 n. 7 (Alaska 1983). The first step is usually satisfied by showing that the aggrieved employee was qualified for the desired position or opportunity, which was denied to that employee and either withheld or provided to someone with different race, sex, or other protected trait. *Meyer*, 906 P.2d at 1375 n. 13.

16. *Meyer* at 1375.

17. *Id.*

18. *Id.*

19. *Id.*

20. *Haroldsen v. Omni Enter., Inc.*, 901 P.2d 426, 431–32 (Alaska 1995).

21. *See, e.g., Alaska State Comm'n for Human Rights v. Yellow Cab*, 611 P.2d 487, 492 (Alaska 1980); *see also* AS 18.80.110.

22. *Meyer*, 906 P.2d at 1376.

23. *Id.* ("The Commission cannot adequately resolve factual disputes if the parties have not been given the opportunity to conduct discovery or cross-examine opposing witnesses.").

In making this determination, the Commission must be sensitive to the reality that direct evidence of discrimination is difficult to find.[24] During the investigative phase, the Commission is charged with "impartially" reviewing the allegations,[25] but an employee seeking to rebut an employer's alleged non-discriminatory reason may have to rely on the Commission to investigate her expressed suspicions because the key evidence in an employment discrimination case—evidence of the employer's decision-making—is likely to be gleaned from employer personnel records unavailable to the employee. An employee alleging discrimination must corroborate her allegations with objective evidence,[26] but she need not develop a conclusive or unassailable account of the employer's decision-making.

As noted above, Grundberg alleged that she had experienced a history of adverse employment decisions; that the Department was more willing to make employment opportunities available to other employees; that the qualifications for the Engineer II position were artificially inflated to exclude her; and that the decision not to hire Grundberg was strongly influenced by one member of the hiring panel. Her March 19 letter detailed some of the adverse employment actions; provided the names of other engineers in the Department who, according to Grundberg, secured Engineer II and III positions, despite having the same or fewer qualifications than Grundberg; and identified a potential witness who could corroborate some of Grundberg's allegations.

Grundberg's submission could have been more complete. For example, she did not provide a detailed account of each employment opportunity denied. And she did not produce refined data about the treatment of other Asian–American women in her age group nor the treatment of similarly situated employees with different backgrounds.[27] But Grundberg made a reasonable effort to corroborate her own perceptions of discriminatory treatment by providing names, dates, examples from her employment history, details about the hiring process and personal dynamics, and a compilation of information about measurable qualifications of her colleagues. Contrary to the Commission's suggestion, Grundberg offered more than her "subjective belief that the hiring process was manipulated to undermine her potential candidacy."

The parties dispute the relevance of certain pieces of evidence, such as the importance of design experience and the significance of seniority. Without conclusively weighing Grundberg's evidence, we can agree that the information she produced could be used to support an inference of discriminatory intent.

Further, we are troubled by certain gaps in the investigative record. Grundberg provided the investigator with the names of other Department engineers who, according to her allegations, had been treated more favorably than Grundberg. Showing that an adverse employment decision is consistent with broader patterns of discrimination reduces the risk that a discrimination case will be based on a single employee's misperception or idiosyncrasies in one individual's employment history.[28] But there is no indication that the investigator sought any information about the number of engineers in

**24.** *Haroldsen,* 901 P.2d at 431–32 (citing *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)) ("[I]t is usually impossible for an employee to directly prove that the employer acted with a discriminatory intent.").

**25.** AS 18.80.110.

**26.** *Mahan v. Arctic Catering Inc.,* 133 P.3d 655, 662 (Alaska 2006) (affirming summary judgment where employee "failed to offer anything more than 'unsupported assumptions and speculation' to establish her theory of pretext" (quoting *French v. Jadon, Inc.,* 911 P.2d 20, 25 (Alaska 1996))).

**27.** *See, e.g., Meyer,* 906 P.2d at 1376 n. 15 (reversing Human Rights Commission determination and closing order where employee met her burden under step three of the burden-shifting analysis by providing evidence that "there had been a significantly higher percentage of women in the applicant pool ... than was reflected by the number of women holding those positions").

**28.** *See Alaska State Comm'n for Human Rights v. Yellow Cab,* 611 P.2d 487, 488 (Alaska 1980) (evidence that employer generally did not hire women as cab drivers supported individual's claim that she was denied employment opportunity).

the Department or how their backgrounds compared to Grundberg's. Nor is there any indication that the investigator called Grundberg to clarify the significance of the experiences of the persons Grundberg named.

In addition, Grundberg alleged that the qualifications for the Engineer II position were inflated or manipulated to exclude her. Grundberg does not suggest that the desired qualifications are irrelevant to the Engineer II position. Rather, she argues that a person without experience programming devices could fill the Engineer II position and alleges that other supervisors in the traffic section do not have first-hand programming experience. In interviews with members of the hiring panel, the Commission investigator asked whether programming electronic traffic devices was an important qualification for the position for which Grundberg applied. But there is no indication that the investigator tried to find out whether other supervisors in the traffic section had this qualification or how the supervisor position Grundberg sought might have differed from other positions in the traffic section. The investigator seemed to ignore the fact that direct evidence of discrimination is difficult for an employee to produce, and her report contained too many gaps for the Commission to determine that Grundberg's case lacked substantial evidence of discrimination.

The strength of the employer's evidence does not change this conclusion. The Commission draws our attention to *Perkins v. Doyon Universal Services, LLC,*[29] where we affirmed summary judgment in favor of an employer because there was no evidence to rebut the employer's non-discriminatory reason; thus, the claimant failed at the third step of the analysis.[30] Although the employer's alleged reasons for not hiring Grundberg have support in the record, these explanations relate to the second step of the burden-shifting framework, which is not in dispute in

this case. Our decision in *Doyon* recognized that the strength of an employer's non-discriminatory reasons does not compel a determination in favor of the employer (or the Commission) unless the employee has failed at the third step to produce evidence of pretext.[31] As explained above, Grundberg does not have this problem because she has produced evidence of pretext sufficient to overcome the "substantial evidence" hurdle in this case.

To be clear, Grundberg's evidence is not conclusive. At this stage, we cannot resolve the ultimate question—whether the failure to hire Grundberg for the Engineer II position was motivated by a discriminatory purpose. But we can say that Grundberg produced evidence to rebut the employer's alleged reasons, so the Commission's determination that there was not substantial evidence of discrimination was erroneous. Grundberg's letter of March 19, 2008, produced evidence that could reasonably rebut the Department of Transportation's alleged reason for not hiring her to fill the Engineer II vacancy.[32]

## V. CONCLUSION

Because Grundberg produced objective evidence that suggests the Department of Transportation's alleged reason for not hiring her was pretextual and because the Commission's investigation was insufficient, we REVERSE the Commission's determination that there was insufficient evidence to warrant a hearing. We REMAND for further proceedings consistent with this opinion.[33]

CHRISTEN, Justice, not participating.

**29.** 151 P.3d 413 (Alaska 2006).

**30.** *Id.* at 416.

**31.** *Id.* ("[G]iven the absence of any direct evidence of discrimination and any permissible inference of fact supporting a claim of pretext, we conclude that no genuine issue of material fact precluded summary judgment for [the employer] as to the animal enforcement officer position.").

**32.** All other arguments and issues implied by Grundberg's briefs are either waived or outside the scope of this appeal. Although Grundberg suggests that her constitutional rights have been violated, she does not point to any authority to support the argument. Thus, insofar as Grundberg seeks to advance a claim under the Alaska Constitution, her argument fails for inadequate briefing. Grundberg also attempts to assert a private cause of action against her employer, but that contention is outside the scope of this administrative appeal; the Department of Trans-

portation is not a party to this action between Grundberg and the Commission.

**33.** The Commission notes in a footnote to its brief that its executive director has discretion to dismiss a complaint if she determines that one of the factors listed in AS 18.80.112(b) applies. The

Commission is correct that the executive director has such discretion, which she may decide to exercise on remand. But as the Commission does not argue specifically that any of the AS 18.80.112(b) statutory factors apply here, we do not need to address this point further.