*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LUIS R. RODRIGUEZ, | ) | |
| | ) | Supreme Court No. S-15383 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-11621 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ALASKA STATE COMMISSION FOR | ) | |
| HUMAN RIGHTS, | ) | No. 7033 – August 14, 2015 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Luis R. Rodriguez, pro se, Anchorage, Appellant. William E. Milks, Assistant Attorney General, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I. INTRODUCTION

An airline employee filed a complaint with the Alaska State Commission for Human Rights, alleging employment discrimination based on his race. The Commission initiated an investigation as required by statute. After the investigation the Commission concluded that the employee's racial discrimination allegations were not

supported by substantial evidence, and the Commission dismissed the complaint without holding a hearing. The employee appealed to the superior court, and the superior court affirmed the Commission's conclusion that the employee's complaint was not supported by substantial evidence. The employee appealed to us. Because we agree that the employee failed to present the Commission substantial evidence of race-based discrimination, we affirm the superior court's decision affirming the Commission's dismissal of the employee's discrimination complaint.

## II.    FACTS AND PROCEEDINGS

Luis Rodriguez is a gay Hispanic man employed by Delta Airlines, Inc. In November 2010 Rodriguez filed a complaint with the Alaska State Commission for Human Rights, accusing Delta of race-based discrimination. Rodriguez alleged that Delta (1) "did not delete the position of a Caucasian coworker with less seniority," and (2) "recently brought another Caucasian employee with less seniority . . . back from lay-off status."

### A.    Commission-Developed Facts And Decision

The Commission notified Rodriguez and Delta that it had initiated an investigation to determine whether Rodriguez's discrimination complaint was supported by substantial evidence. A Commission investigator interviewed Rodriguez, his union representative, and Delta staff. The investigator also reviewed Delta's position statement and Delta's responses to information requests.

The Commission determined that Rodriguez previously had worked for Northwest Airlines and became a Delta employee when the two airlines merged. Rodriguez had been employed as an equipment service employee (ESE) in cargo operations in Anchorage. In December 2009 Delta had informed Rodriguez and other ESEs that they would be furloughed from their positions as full-time cargo-operations ESEs. Delta explained to the Commission that this furlough "caused [Rodriguez and the

other cargo-operations ESEs] to transfer to similar ESE positions working with scheduled passenger flights on the aircraft operations ramp." Furloughed employees were offered part-time temporary positions in Anchorage. But under the terms of his union's collective bargaining agreement, when furloughed Rodriguez also was entitled to exercise his seniority and displace a junior ESE at another location. In May 2010 Rodriguez exercised his seniority and requested a transfer to Seattle.

Rodriguez told the Commission that he did not have the opportunity to bid for a part-time position in Anchorage, and that a Caucasian employee with less seniority was allowed to remain in a position in Anchorage. Rodriguez also asserted that while working on the ramp in Anchorage, after the furlough from cargo operations, he "was constantly harassed (called 'faggot' and other names) by his supervisor Nash and several coworkers." In April 2010 Delta received complaints about Nash's behavior, subsequently conducted an investigation, and in July terminated Nash's employment. During the investigation Rodriguez informed Delta that Nash gave Rodriguez no overtime, harassed him, made comments about his sexuality, and retaliated against him for reporting to management.

Approximately two weeks after accepting the Seattle position, and before working a single shift, Rodriguez requested a transfer back to Anchorage. Delta granted Rodriguez's request and in July, shortly after Nash had been terminated, Delta offered Rodriguez a temporary ESE position in Anchorage. After returning to Anchorage Rodriguez worked one day but then called in sick for his next five shifts. Delta informed the Commission that Rodriguez had then "abruptly requested to end his temporary assignment and return to furlough status."

Rodriguez attempted to justify to the Commission his poor work attendance and furlough request, explaining that his union representative recommended layoff status because Rodriguez was depressed, stressed, and afraid after receiving harassing

telephone calls from Nash. Rodriguez asserted that he reported the calls but Delta human resources would not allow him to take stress-based injury leave and would not allow him to return to furlough status without providing documentation establishing medical reasons. Rodriguez also claimed that a Delta manager told him to go on layoff status.

Delta explained that it subsequently determined that it "needed another temporary ESE" in Anchorage. Delta did not offer Rodriguez the assignment because there were limited opportunities and Rodriguez "gave . . . airport leaders a poor impression of his dependability and willingness to resume working."[1] Delta instead offered the position to a "less senior active Caucasian ESE." Rodriguez asserted that the Caucasian ESE and additional less senior employees were called back for full-time positions, violating the collective bargaining agreement. Delta contested Rodriguez's assertion, explaining that after July 2010 it had not hired or re-hired any ESEs and had instead relied on existing ESEs working temporary assignments.

Delta explained to the Commission that "the fact that . . . Rodriguez was not selected [for the temporary ESE position] bears no relation to . . . Rodriguez's ability to be recalled for permanent work. Indeed, if and when permanent positions open up at his work location, . . . Rodriguez will be recalled to duty based entirely on his seniority." Delta explained that "[i]f a temporary ESE position is intended to last no longer than three months, Delta can by-pass seniority and select an ESE at its discretion to fill the short-term assignment" because the collective bargaining agreement did not require that Delta make temporary position offers based on employee seniority. And Delta argued that Rodriguez's assertion that he was not selected for the temporary assignment because of his race "is based solely on speculation and is easily contradicted by the poor

---

[1] There is evidence in the record that Rodriguez's poor attendance predated the Northwest-Delta merger and that Rodriguez was admonished by Northwest for poor work attendance.

attendance and reliability he demonstrated when he was previously selected for the temporary position. Indeed, he was passed over for legitimate, non-discriminatory reasons."

Delta provided evidence that it filled temporary positions after July 1, 2010 with a diverse group of ESEs, selecting five Asian-Americans, three Caucasians, and one African-American. Delta explained that Rodriguez was not offered the subsequent temporary ESE position because of Rodriguez's failure to work in Seattle as well as his poor attendance when he returned to Anchorage — Delta denied any of its decisions were motivated by race. Delta also explained that the less senior Caucasian ESE "maintained perfect attendance; unlike . . . Rodriguez he did not even miss one scheduled work day." Delta provided evidence of hours worked to support its assertion. And in May 2011 Rodriguez was offered and accepted another temporary ESE position.

The Commission concluded that Rodriguez's December 2009 furlough was not timely challenged. The Commission therefore did not determine whether there was substantial evidence that Rodriguez had been furloughed because of his race.[2] The Commission next addressed Rodriguez's assertion that Delta discriminated against him because of his race by hiring a junior Caucasian employee instead of Rodriguez when filling the temporary position in September 2010. The Commission explained that "[e]vidence showed that [Delta], in making its selection, compared [Rodriguez's] poor attendance during his last two assignments with the other ESE's good attendance record," that Rodriguez "accepted another temporary ESE position with [Delta] in May 2011," and that the "[i]nvestigation did not show that [Delta] discriminated against

---

[2]     During the investigation the Commission informed Rodriguez: "Your first allegation — that your position was deleted and the position of a Caucasian worker was not deleted is not timely for this complaint. This occurred more than 180 days before your complaint was filed."

[Rodriguez] based on his race." The Commission found Rodriguez's discrimination allegation was not supported by substantial evidence and dismissed his complaint without a hearing.[3]

## B.    Superior Court Proceedings

Rodriguez appealed pro se to the superior court, asserting that the Commission's decision was unfair and requesting a more careful review of his case. Rodriguez detailed complaints about the stressful work atmosphere before he transferred to Seattle and about Nash's harassment. Rodriguez also argued that the Commission "didn't do [a] full investigation."

The Commission explained to the superior court that "the investigation did not disclose substantial evidence of race discrimination" and that "the investigation did not disclose evidence revealing a reasonable possibility that race discrimination motivated Delta's decision to recall another employee of a different race than Rodriguez in September 2010." The Commission also asserted that "regarding Rodriguez's initial layoff on December 30, 2009, the complaint of discrimination filed with the Commission on November 15, 2010 was untimely as it was filed more than 180 days after the layoff date." Finally, the Commission noted that Rodriguez focused on his sexual orientation and Nash's offensive behavior — allegations that did not support the race-based discrimination assertion.

At oral argument before the superior court Rodriguez discussed Nash's harassment, and asserted that issues started when Rodriguez was moved to the ramp area. Rodriguez asserted that the harassment continued when he returned from Seattle and

---

[3]    If the Commission's investigation reveals substantial evidence of discrimination the Commission may refer the complaint for a hearing. AS 18.80.120(a). If the Commission's investigation fails to reveal substantial evidence of discrimination the Commission shall dismiss the complaint. AS 18.80.112(a).

noted that his mental stress had led him to see a psychiatrist and to call a Delta hotline asking for help. Rodriguez mentioned that Nash called to harass him when he went back to work. And Rodriguez argued that the Commission failed to conduct a thorough investigation.

The superior court first attempted to determine whether Rodriguez's claim was timely filed. Rodriguez explained that he waited until November 2010 because the union was investigating his complaint. Rodriguez then asserted that he was complaining not only about his furlough, but also about not being hired back.

The court then asked Rodriguez about racial discrimination. Rodriguez responded by talking about seniority and his pay decrease; he mentioned that Delta kept an employee with lower seniority while higher seniority employees had to leave. The court pressed Rodriguez to talk about race. Rodriguez mentioned the investigation of Nash before Rodriguez went to Seattle, but again said nothing about racial discrimination.

The Commission's attorney asserted that its authority was limited to race discrimination, and noted that it had investigated the complaint as alleging race-based discrimination when Rodriguez was furloughed in December 2009 and as alleging race-based discrimination for failure to recall him in late summer 2010. He explained that Rodriguez's complaint was not timely as to the initial layoff.

The Commission's attorney then discussed Delta's decision not to recall Rodriguez and instead recall a less senior Caucasian employee. He noted that Rodriguez was furloughed with a number of other employees, that Rodriguez decided not to continue his employment in Seattle, and that Delta permitted him to return and receive temporary employment in Anchorage. He explained that Rodriguez was rehired in 2011, and that no evidence of racial animus had been presented. He noted that the facts supported Delta's explanation for selecting an employee with perfect attendance. He

noted Nash's bad behavior, but explained that the Commission found no animus from Nash or Delta based on Rodriguez's race.

The court again asked Rodriguez whether he was complaining of racial discrimination. Rodriguez responded that his complaint was a little bit of everything. The court asked Rodriguez if he still thought there had been racial discrimination, and what the evidence was. Rodriguez responded that he thought there had been discrimination, but he was unable to point to any specific evidence of raced-based discrimination.

Instead Rodriguez complained that the Commission's investigation was insufficient. Rodriguez talked about his visits with a psychiatrist and how humiliated he felt. The court again asked Rodriguez for evidence of racial discrimination, and Rodriguez again asserted that the Commission's investigation was insufficient. The court asked what racial discrimination information would have come from additional investigation, but Rodriguez was unable to explain how racial discrimination led to any of Delta's decisions.

The superior court noted that "if an investigation by the Commission does not reveal substantial evidence of discrimination based on race . . . then the Commission *must* dismiss the complaint for lack of jurisdiction" (emphasis in original) and that "the Commission has no power to address decisions based on workplace seniority." The court explained that Rodriguez's arguments focused on seniority rather than race and that he pointed to no evidence of race-based discrimination. The court affirmed the Commission's decision because the "255 page record established that the Commission adequately investigated . . . Rodriguez's claim" and because "there is no evidence that Delta discriminated against [Rodriguez] because of his race."

## III.  STANDARD OF REVIEW

"In an appeal originating with an administrative agency, we do not look to

the superior court's decision when that court acts as an intermediate court of appeal, instead directly reviewing the agency's decision."[4]  Although the Commission argues that we should apply the substantial evidence standard of review to its decision, a very deferential standard,[5] we previously have explained that "[a] determination that a party failed to produce substantial evidence of discrimination is a question of law to which we apply our independent judgment."[6]

## IV.  DISCUSSION

### A.  Legal Background

Under AS 18.80.220(a) it is illegal for

> an employer to refuse employment to a person, or to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment because of the person's race, religion, color, or national origin, or because of the person's age, physical or mental disability, sex, marital status, changes in marital status, pregnancy, or parenthood when the reasonable demands of the position do not require distinction on the basis of age, physical or mental disability, sex, marital status, changes in marital status, pregnancy, or parenthood.

The statute does not include discrimination based on a complainant's sexual orientation.

A person alleging employment discrimination may file a complaint with the

---

[4]  *Grundberg v. Alaska State Comm'n for Human Rights*, 276 P.3d 443, 449 (Alaska 2012) (footnote omitted).

[5]  *See, e.g.*, *Alaska State Comm'n for Human Rights v. Yellow Cab*, 611 P.2d 487, 490 (Alaska 1980) ("The standard of review to be applied by the reviewing court is whether the agency's findings of fact are supported by substantial evidence. . . . [T]he evidence should be viewed in favor of the findings even though the reviewing court might have taken a contrary view of the facts." (footnotes omitted)).

[6]  *Grundberg*, 276 P.3d at 449 (citing *Button v. Haines Borough*, 208 P.3d 194, 200 (Alaska 2009); *Leigh v. Seekins Ford*, 136 P.3d 214, 216 (Alaska 2006)).

Commission.[7] "A complaint alleging a discriminatory act or practice not of a continuing nature must be filed no later than . . . 180 days after the alleged discriminatory act or practice occurred . . . ."[8] "The [Commission] . . . shall informally investigate the matters set out in a filed complaint, promptly and impartially."[9] "If an investigation of a complaint . . . fails to discover substantial evidence of an unlawful discriminatory practice . . . the [Commission] shall issue an order dismissing the complaint without prejudice"[10] and without a hearing.[11]

We have adopted a three-step burden-shifting framework when evaluating discrimination claims.[12] "In the first stage of the burden-shifting analysis, the employee claiming discrimination must introduce evidence that raises an inference that an unfavorable employment decision resulted from the employer's discriminatory intent."[13] We have explained that "[t]he first step of the analysis places the burden on the

---

[7]     *See* AS 18.80.100(a) ("A person who is aggrieved by a discriminatory practice prohibited by this chapter may sign and file with the commission a written, verified complaint stating the name and address of the person alleged to have engaged in the discriminatory practice, and the particulars of the discrimination.").

[8]     6 Alaska Administrative Code (AAC) 30.230(b)(2) (2014).

[9]     AS 18.80.110.

[10]    AS 18.80.112(a).

[11]    *See* AS 18.80.110, .120 (together providing for an evidentiary hearing if the Commission's investigation reveals substantial evidence of discrimination).

[12]    *Grundberg v. Alaska State Comm'n for Human Rights*, 276 P.3d 443, 449 (Alaska 2012) (citing *State, Dep't of Fish & Game, Sport Fish Div. v. Meyer*, 906 P.2d 1365, 1374 (Alaska 1995)).

[13]    *Id.* at 450.

complaining party to establish a prima facie case of discrimination."[14] To establish a prima facie case of discrimination:

> The complainant must show that (1) the complainant belongs to a protected class; (2) the complainant applied for and was qualified for the job for which the employer was seeking applications; (3) the complainant was rejected despite the complainant's qualifications; and (4) after the complainant's rejection, the position remained open and the employer continued seeking applications from persons with the complainant's qualifications.[15]

"The burden then shifts, in the second stage, to the employer to articulate and provide evidence of a legitimate, non-discriminatory reason for its action."[16] "In the third stage of the analysis, the burden shifts back to the employee to rebut the employer's alleged non-discriminatory reason."[17]

"The burden-shifting framework governs the Commission's investigation of discrimination complaints and its determinations of substantial evidence."[18] But we have also explained that "[t]he burden required to compel a hearing is less than the burden required to prevail on the merits at the hearing's conclusion."[19] Thus, "a

---

[14] *Raad v. Alaska State Comm'n for Human Rights*, 86 P.3d 899, 904 (Alaska 2004).

[15] *Id.*

[16] *Grundberg*, 276 P.3d at 450.

[17] *Id.*

[18] *Id.*

[19] *State, Dep't of Fish & Game, Sport Fish Div. v. Meyer*, 906 P.2d 1365, 1376 (Alaska 1995), *superseded by statute*, ch. 63, § 4, SLA 2006. Despite being superseded by statute the *Meyer* analysis is still applicable. We have explained:

(continued...)

[Commission] finding of no substantial evidence cannot be based on the fact that a complainant 'failed' to meet the three-part . . . test at the investigative stage."[20] Instead, at the investigative stage "the Commission must determine whether there is a reasonable possibility that discriminatory reasons motivated the employer's decision."[21]

When reviewing a Commission decision dismissing a discrimination complaint without conducting a hearing, we ask whether the "evidence discussed by the Commission . . . demonstrate[d] that [the] claims were completely lacking in merit, or

---

[19]    (...continued)

When *Meyer* was decided complaints could be dismissed after an investigation but before a hearing for lack of substantial evidence, but not for prudential or policy reasons. After *Meyer* was decided, the legislature enacted AS 18.80.112(b) to give the [Commission] discretion to dismiss a complaint for a number of reasons in addition to the lack of substantial evidence. Ch. 63, § 4, 2006 SLA. These reasons include that the complainant has indicated an intent to bring an action based on the same facts in another forum, that the hearing will not represent the best use of Commission resources or advance the purposes of eliminating or preventing discrimination, or that the probability of success of the complaint on the merits is low. AS 18.80.112(b). In this case the [Commission] did not dismiss the complaint based on any of these reasons; the dismissal was based on the lack of substantial evidence. Such dismissals remain reviewable in accordance with *Meyer*.

*Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 623 n.3 (Alaska 2012) (citation omitted). Because the Commission dismissed Rodriguez's claim for lack of substantial evidence we review the dismissal in accordance with *Meyer*.

[20]    *Meyer*, 906 P.2d at 1376.

[21]    *Grundberg*, 276 P.3d at 450.

that a fact finder would be compelled to find for [the employer]."[22] We will reverse the Commission's decision if the complainant "raised a genuine dispute regarding [the employer's] employment decisions" because such factual disputes must be resolved through a hearing.[23] "We have made clear that the Commission should not 'attempt to determine at the investigative stage whether the non-discriminatory reasons proffered by the employer are legitimate.' Instead, the Commission must determine whether there is a reasonable possibility that discriminatory reasons motivated the employer's decision."[24] "An employee alleging discrimination must corroborate . . . allegations with objective evidence, but . . . [does not need to] develop a conclusive or unassailable account of the employer's decision-making."[25]

**B.    The Commission Correctly Concluded That Rodriguez's Complaint Regarding The Deletion Of His Position Was Untimely.**

Rodriguez asserted that Delta discriminated against him based on his race when it "did not delete the position of a Caucasian coworker with less seniority . . . [who] is still employed in Anchorage." The Commission explained that the "[i]nvestigation showed that [Rodriguez's] layoff is not timely for this complaint." Rodriguez, appealing pro se, does not explicitly challenge or address the Commission's timeliness conclusion, focusing instead on his negative interactions with Nash and alleging the Commission failed to conduct a thorough investigation.

"Although we require courts to provide some procedural guidance for a pro

---

[22]    *Meyer*, 906 P.2d at 1376.

[23]    *Id.* at 1375-76 & n.14.

[24]    *Grundberg*, 276 P.3d at 450 (footnote omitted) (quoting *Meyer*, 906 P.2d at 1376).

[25]    *Id.* at 451 (footnote omitted).

se litigant when it is clear what 'action he or she is obviously trying to accomplish,' the failure to raise an argument in an opening brief leaves the other party with no notice or opportunity to respond . . . ."[26] Because Rodriguez has not addressed timeliness, he has waived any challenge to the Commission's untimeliness conclusion. Even had Rodriguez not waived this argument, the Commission correctly concluded that he failed to timely challenge the initial furlough decision. The record establishes that Rodriguez was furloughed in December 2009. Rodriguez's complaint, filed in November 2010, was not timely filed within the allowable 180-day time period.[27]

## C. The Commission Correctly Concluded There Was Not Substantial Evidence Of Race-Based Discrimination.

Rodriguez established a prima facie case of discrimination. There was evidence that Delta hired a less-senior Caucasian employee over Rodriguez for the temporary ESE position. And at oral argument before the superior court the Commission's attorney explained that the Commission did not argue Rodriguez had failed to establish a prima facie case of discrimination. He instead asserted that there was not substantial evidence supporting an inference that Delta was motivated by discriminatory reasons.

Delta provided non-discriminatory reasons for its decision to hire the less-senior Caucasian employee for the temporary assignment — Delta asserted that it did not have faith Rodriguez would fulfill his obligations because he never reported to work in Seattle, called in sick after one day of work upon returning to Anchorage, and then requested to return to furlough status. Delta also provided evidence that it selected a diverse group of temporary ESEs — five Asian-Americans, three Caucasians, and one

---

[26] *Hymes v. DeRamus*, 222 P.3d 874, 887-88 (Alaska 2010) (quoting *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987)).

[27] *See* 6 AAC 30.230(b)(2).

African-American — after Rodriguez had requested to return to furlough status.

Rodriguez failed to rebut Delta's evidence and explanations for its employment decisions; i.e., Rodriguez failed to point to any objective evidence corroborating his allegation and thus failed to establish a reasonable possibility that discriminatory reasons motivated Delta's decisions. Rodriguez's arguments throughout this case focused on seniority, his sexual orientation, and Nash's extremely inappropriate behavior, but Rodriguez's complaint to the Commission alleged racial discrimination. The superior court repeatedly encouraged Rodriguez to point to any evidence of race-based discrimination, but he was unable to do so. And in his brief to us Rodriguez implies that he was furloughed and not rehired in retaliation for providing information about Nash, but this does not establish a reasonable possibility of race-based discrimination. And although Rodriguez admonishes the Commission for failing to conduct further investigation into his mental health and his reaction to Nash's behavior, Rodriguez has not explained what evidence of racial discrimination the Commission would have discovered upon further investigation. Nor has Rodriguez disputed Delta's evidence providing legitimate, non-race-based reasons for its employment decisions.

Because Rodriguez failed to "corroborate [his] allegations with objective evidence,"[28] we conclude the Commission correctly decided there was not substantial evidence that Delta discriminated against Rodriguez based on his race.

## V.   CONCLUSION

We AFFIRM the superior court's decision to affirm the Commission's dismissal of Rodriguez's discrimination complaint.

---

[28]   *Grundberg*, 276 P.3d at 451.