*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RUSSELL BAKER, ) | |
| ) | Supreme Court No. S-17379 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-17-08687 CI |
| v. ) | |
| ) | O P I N I O N |
| ALASKA STATE COMMISSION ) | |
| FOR HUMAN RIGHTS and ) | No. 7483 – September 18, 2020 |
| FEDERAL EXPRESS ) | |
| CORPORATION, ) | |
| ) | |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jennifer Henderson, Judge.

Appearances: Russell Baker, pro se, Anchorage, Appellant. William E. Milks, Assistant Attorney General, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee Alaska State Commission for Human Rights. William J. Evans, Sedor, Wendlandt, Evans & Filippi, LLC, Anchorage, and P. Daniel Riederer, Federal Express Corporation, Memphis, Tennessee, for Appellee Federal Express Corporation.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

BOLGER, Chief Justice.

## I.  INTRODUCTION

A pilot was fired by his employer after he collected a relocation allowance based on misleading statements that his spouse had relocated with him.  While his employment termination proceedings were ongoing, he filed complaints with the Alaska State Commission on Human Rights, contending first that his employer engaged in marital status discrimination by requiring married pilots to relocate their spouses as a condition of the relocation allowance and second that his employer retaliated against him for filing the first complaint.  The Commission concluded that there was substantial evidence of illegal discrimination, but exercised its statutory discretion to dismiss the complaint instead of bringing an enforcement action.  The Commission also dismissed his second complaint, concluding that there was not substantial evidence of retaliation.  The pilot appealed the Commission's decisions to the superior court, which affirmed the decisions, and he now appeals to this court.  We conclude that the Commission did not abuse its substantial discretion by declining to prosecute the discrimination complaint.  We also conclude that the Commission did not err by concluding that the employer did not retaliate against the pilot after he filed his discrimination complaint.  We therefore affirm.

## II.  FACTS AND PROCEEDINGS

Russell Baker was hired by Federal Express Corporation (FedEx) in June 2006.  Employment agreements between FedEx and its pilots are established via collective bargaining with a union, the Air Line Pilots Association, International (ALPA).  During the relevant period of Baker's employment, ALPA's agreement with FedEx offered pilots on foreign duty assignments options to finance either relocation housing or their commute.  Pilots based in Hong Kong could elect an "enhanced" relocation package instead of commuting.  Pilots choosing that package had 18 months to complete their relocation, but were obligated to reimburse FedEx if they did not

actually relocate. FedEx retained the right to request documentation establishing that relocation had actually occurred, including "verification of the permanent relocation of a pilot's spouse, and/or dependent children under the age of 18 years, if applicable."

In August 2009 Baker accepted an assignment to Hong Kong. In November 2009 he submitted a signed "Pilot Relocation Request Form" selecting the housing allowance "Enhanced Option," indicating that he understood the requirements and attesting that his spouse would relocate with him. In November Baker also emailed the FedEx relocation department, writing, "As you saw we're planning on taking the relocation package." He further wrote, "We [are] planning on traveling to [Hong Kong] just after Christmas to get set up."

Baker began flying trips out of Hong Kong in January 2010. In March Baker leased an apartment in Hong Kong. He began receiving housing allowance payments in April. According to Baker, he verbally informed the assistant chief pilot in Hong Kong that his spouse would relocate in the fall of 2010 after she resolved some health and employment issues.

In August 2010 Baker requested FedEx's relocation department purchase a one-way airplane ticket for his wife to travel from Anchorage to Hong Kong, stating, "My wife is ready to join me in Hong Kong" and "[w]e're finishing up our relocation process to [Hong Kong]." On October 16, 2010, his wife traveled to Hong Kong with a FedEx-purchased airplane ticket, but unbeknownst to FedEx, she had already purchased a return ticket. On October 25, 2010, she flew back to Anchorage, and did not return to Hong Kong for the remainder of Baker's assignment.

In May 2011 the FedEx Hong Kong assistant chief pilot emailed pilots a new housing allowance claim form and guidelines regarding the housing allowance. In June 2011 Baker returned the form, attesting that he understood the requirements and the potential consequences of falsification. He did not mark "yes" or "no" in response to the

question, "Does your spouse reside with you at the residence listed above?" Instead, he wrote "see note" and attached a "Note of Explanation Regarding My Spouse's Current Hong Kong Residency." His note stated, "After talking with ALPA, I realize my spouse may not currently qualify as a resident in Hong Kong. I had previously considered her a resident, based on many factors, including completion of her physical relocation, the establishment of our private Hong Kong apartment, [and] her documentation as a resident . . . ." Baker added that although he found the requirements unclear, he did not believe his wife's return to the United States violated company policy because he "expected her to return with a frequency and duration" that would satisfy residency requirements. He acknowledged that his wife had not "expressed plans to return [to Hong Kong] within the next 45 days." He requested a waiver if the company determined he was not in compliance with the housing allowance requirements, without offering information regarding any extenuating circumstances other than his current visitor visa status and the scheduled end of his foreign duty assignment in six months. He did not raise concerns about marital status discrimination or allege that the housing allowance requirements unfairly impacted married pilots.

On September 21, 2011, FedEx notified Baker that he was under investigation for having improperly collected housing allowance payments. Around this time, FedEx began similar investigations of several other pilots.

On October 12, 2011, Baker filed a complaint with the Commission. He stated that FedEx's housing allowance policy constituted marital status discrimination. On the same date Baker also responded to FedEx's notice of investigation. He asserted that he had expected to have an 18-month window to complete any relocation, that he found the company's residency requirements subjective and confusing, that the policy constituted discrimination against married pilots, and that he believed he had been

appropriately forthcoming with the company regarding his "good faith" attempt to relocate.

In December 2011 FedEx held a preliminary hearing as part of a internal disciplinary process. Baker was represented by an ALPA member and two ALPA attorneys. At the hearing Baker acknowledged that he had requested the enhanced housing allowance knowing that he and his wife were required to establish a primary residence in Hong Kong. Baker stated that he was aware that his wife's nine-day trip to Hong Kong might not constitute a relocation, but that he believed they had 18 months to complete the relocation. He further acknowledged that he had received monthly housing allowance payments beginning in April 2010, that his wife had not been to Hong Kong since October 2010, and that he had not submitted his "Note of Explanation" until June 2011.

In early March 2012, FedEx proposed a settlement agreement. According to FedEx, similar proposals were extended to all pilots found to have inappropriately collected the housing allowance. According to this proposal, if Baker acknowledged FedEx had just cause to terminate his employment based on his inappropriate collection of the housing allowance, underwent a disciplinary suspension without pay, and repaid the cost of the housing allowance, he could retain his job. Baker did not accept the settlement offer.

Later that month, the hearing officer issued a preliminary decision. Addressing Baker, he wrote:

> It is clear from the record that you knew at all times pertinent to this case that you were not entitled to receive [Hong Kong] housing allowance payments unless both you and your wife relocated your primary residence to [Hong Kong]. . . . [Y]ou knew that both you and your wife were required to complete the relocation of your primary residence to [Hong Kong] by approximately June 2011.

It is also clear from the record that your wife did not complete the relocation of her permanent residence to [Hong Kong] at any time, and certainly not within 18 months from the date of your activation into your [Hong Kong] crew position.

The hearing officer further found that the record undercut Baker's representation that he believed his wife had a "genuine intent" to relocate based on the way her trip to Hong Kong was planned and executed. The hearing officer noted that although Baker requested a one-way ticket from FedEx for his wife's relocation to Hong Kong, he was aware that she personally purchased a return ticket for nine days later without a plan to return. This indicated to the hearing officer that Baker's wife's October 2010 trip occurred only to create the appearance of relocation.

The hearing officer additionally observed that Baker frequently "jumpseated"[1] to Anchorage, but rarely used jumpseats on FedEx flights and that Baker himself was reluctant to testify about his jumpseating practices during the period when his wife was allegedly still planning to relocate to Hong Kong. These facts led the hearing officer to conclude that Baker wanted to conceal the frequency of his trips to avoid raising questions regarding whether he and his wife resided in Hong Kong. Based on the record in Baker's case, the hearing officer recommended that his employment with FedEx be terminated.

Baker availed himself of an internal appeals process. In early March 2013, the panel considering his appeal issued a final decision stating that FedEx "has clearly and convincingly established the existence of just cause for [Baker's] termination" by

---

[1] The record indicates that pilots who declined to relocate were eligible to commute to their workplace via "staging jumpseat travel." Jumpseat privileges apparently allow pilots to occupy open crew member seats for personal and staging travel.

showing that he "intentionally deceived [FedEx] into believing that his spouse had completed her relocation or would be completing it, while at the same time accepting housing allowance payments . . . he knew he would not be eligible to receive."

Meanwhile, in April 2012, Baker filed a second complaint with the Commission, alleging that FedEx had retaliated against him for filing the October 2011 marital status discrimination complaint, first by suspending his jumpseat privileges and then by firing him. The Commission investigated both of Baker's claims and dismissed them, initially concluding that the Commission lacked jurisdiction over the issue of marital status discrimination because it had occurred in Hong Kong. Multiple superior court appeals and extensive administrative proceedings followed.[2]

After the most recent May 2016 remand from the superior court, the Commission expanded its investigation of both the marital status discrimination complaint and the retaliation complaint. Ultimately, the Commission found substantial evidence that FedEx had discriminated against married pilots. It noted that a "pilot's spouse was required to relocate with them for the pilot to be eligible for the enhanced option," but "[u]nmarried pilots were not subject to the same requirements." It stated, "Investigation did not show . . . that the reasonable demands of the position required [FedEx] to make a distinction on the basis of a pilot's marital status to determine their housing allowance eligibility." But instead of proceeding to an enforcement hearing, the Commission closed the marital status discrimination case, citing AS 18.80.112(b)(5) and

---

   [2]   These proceedings included the initial investigation, closure of that investigation by the Commission, an appeal to the superior court, a request by the Commission for remand so that it could address issues with the record, and further investigation, which was followed by another closure. In total, this generated a record of nearly 2,000 pages. We do not discuss these proceedings in detail, as they are not the subject of the present appeal.

(6).[3] It explained, "A hearing would not represent the best use of Commission resources and would not advance the purposes stated in AS 18.80.200."

The Commission also issued a determination addressing Baker's retaliation claim. The determination summarized the facts and chronology of Baker's employment in Hong Kong, his selection of the enhanced housing allowance, and his communication with FedEx regarding his relocation with his wife. The Commission noted that Baker did not file a complaint with the Commission until October 12, 2011 — three weeks after FedEx began the investigation. The Commission concluded that "[t]here was no evidence . . . that [FedEx] treated [Baker] any differently in its settlement attempts than the several other pilots who were also under investigation for improperly receiving the housing allowance" even though the other pilots had not filed complaints with the Commission.

The Commission also considered a statement made by FedEx's in-house counsel in December 2011 that Baker's complaint with the Commission was "not helping him with [FedEx], and, in fact, [was] having the opposite effect." The Commission investigated this statement and re-interviewed the in-house counsel. Counsel indicated that he did not recall making the statement, but it would have related

---

[3]    AS 18.80.112(b) states:

At any time before the issuance of an accusation under AS 18.80.120, the executive director may dismiss without prejudice a complaint if the executive director determines that

. . . .

(5) a hearing will not represent the best use of commission resources;

(6) a hearing will not advance the purposes stated in AS 18.80.200. . . .

to FedEx's "inability to progress in settlement discussions with [Baker] because of . . . [his] litigious posture." The Commission determined that the statement did not constitute substantial evidence of retaliation, because ultimately Baker was offered the same settlement agreement as other pilots who had not filed discrimination complaints, and those other pilots who did not accept the settlement were also terminated. The Commission noted that Baker's "intentional deceit of the company[] was clearly an offense warranting termination," and "there was no evidence to suggest that, had [Baker] not filed his complaint with the Commission, he would have escaped the same discipline meted out to others."

Baker appealed both decisions to the superior court. In Baker's briefing, he challenged a range of FedEx and ALPA procedural and policy issues and questioned the factual basis for his termination. However, only two issues were actually before the superior court: "whether [the Commission] properly dismissed the discrimination complaint under AS 18.80.112(b)(5) and (6)" and "whether [the Commission] complied with the [superior] court's remand order when it dismissed the retaliation complaint for lack of substantial evidence." The superior court ruled in favor of the Commission on both issues.

Baker now appeals.

## III. STANDARD OF REVIEW

When considering an administrative agency's decision after the superior court acts as an intermediate appellate court, "we independently review the merits of the agency's decision."[4] We generally refrain from reviewing an executive agency's

---

[4]     *Ross v. Alaska State Comm'n for Human Rights*, 447 P.3d 757, 764 (Alaska 2019) (quoting *Pub. Safety Emps. Ass'n, AFSCME Local 803, AFL-CIO v. City of Fairbanks*, 420 P.3d 1243, 1248 (Alaska 2018)).

exercise of discretionary enforcement authority.[5]  However, "we may review such an exercise to [ensure] its 'conformity with law and that it is not so capricious or arbitrary as to offend due process.' "[6]

In reviewing questions of law that do not involve agency expertise, including constitutional questions, "we . . . substitute our judgment for that of the administrative agency."[7]  A determination that a party failed to produce substantial evidence of retaliation is also a question of law to which we apply our independent judgment.[8]

## IV.    DISCUSSION

### A.    The Commission's Decision To Dismiss Baker's Discrimination Complaint Was Not So Arbitrary And Capricious As To Offend Due Process.

Baker argues that by declining to prosecute his discrimination complaint, without articulating a justification, the Commission violated due process because he cannot assess or challenge its reasoning.  Baker contrasts the present record with the facts

---

[5]     *Yankee v. City & Borough of Juneau*, 407 P.3d 460, 463 (Alaska 2017).

[6]     *Id.* (quoting *Vick v. Bd. of Elec. Exam'rs*, 626 P.2d 90, 93 (Alaska 1981)).

[7]     *Cook Inlet Pipe Line Co. v. Alaska Pub. Utils. Comm'n*, 836 P.2d 343, 348 (Alaska 1992).

[8]     *See Raad v. Alaska State Comm'n for Human Rights*, 86 P.3d 899, 904 (Alaska 2004) (applying de novo review to the Commission's determination that there was not substantial evidence of retaliation); *cf. Rodriguez v. Alaska State Comm'n for Human Rights*, 354 P.3d 380, 385 (Alaska 2015) (holding that a determination that a party failed to produce substantial evidence of discrimination is a question of law, which we review de novo).

of *Yankee v. City & Borough of Juneau*,[9] in which the government provided specific reasons for declining to exercise discretionary enforcement authority. Baker also suggests that the Commission improperly accepted factual assertions by FedEx without appropriate evidence in the record to support those assertions. Baker implies that such evidentiary flaws, especially when considered in the aggregate and in the context of the Commission's repeated dismissal of his case, constitute a due process issue even under our highly deferential standard of review. Baker additionally asserts that the Commission's determination that pursuing his complaint would not advance agency purposes was unreasonable.[10]

The Commission and FedEx argue that the Commission acted with clear statutory authority, that this court reviews an administrative decision not to prosecute with substantial deference, and that, regardless of the standard of review, the Commission's investigation and decision were thorough, appropriate, and accurate.

In reviewing the Commission's invocation of AS 18.80.112(b), we ask whether the Commission's decision not to issue an accusation (1) did not conform with the law or (2) was so arbitrary and capricious as to offend due process.[11] Despite finding that substantial evidence supported Baker's marital status discrimination complaint, the Commission declined to pursue it further, stating that "[a] hearing would not represent the best use of Commission resources and would not advance the purposes stated in AS 18.80.200."

---

[9]     407 P.3d 460.

[10]     Baker raises multiple related concerns regarding the Commission's decision:  the agency was biased against him; marital status discrimination was widespread, suggesting that enforcement would actually be a good use of agency resources; and pursuing the complaint could establish valuable precedent.

[11]     *Yankee*, 407 P.3d at 463.

The Commission's mandate and powers stem from AS 18.80.010-300.[12] This statute directs the Commission to seek to "eliminate and prevent discrimination in employment . . . because of . . . marital status."[13]  Alaska Statutes 18.80.112(b)(5) and (6), however, vest the executive director of the Commission with the authority to dismiss a complaint without prejudice for the very reasons cited by the Commission.[14]  The statute indicates that the executive director can, on a case-by-case basis, determine whether to refer substantiated cases to hearings when conciliation is unsuccessful.[15]

While the Commission cited two statutory bases for declining to prosecute Baker's complaint, we can affirm based on the first:  AS 18.80.112(b)(5), that further proceedings would not represent the best use of Commission resources.  The first prong of the two-part *Yankee* test, whether the decision did not conform with the law, does not require detailed analysis.  The legislature clearly authorized the Commission to consider resource limitations when deciding whether or not to issue accusations.  And, as the

---

[12]     Relevant portions of the statute set out the investigation and conciliation structure (AS 18.80.110); describe the grounds on which the Commission can dismiss a complaint without prejudice (AS 18.80.112); describe procedures for a hearing if conciliation procedures fail after the Commission finds substantial evidence of discrimination (AS 18.80.120); describe the enforcement mechanisms that the Commission can utilize if the hearing produces a finding of discrimination (AS 18.80.130); and describe the overall purpose of the Commission (AS 18.80.200).

[13]     The totality of the Commission's defined purpose is much broader.  *See* AS 18.80.200(b) (addressing discrimination because of "race, religion, color, national origin, sex, age, physical or mental disability, marital status, changes in marital status, pregnancy or parenthood.").

[14]     AS 18.80.112(b); *see supra* note 3 (setting out statutory language).

[15]     *See* AS 18.80.120(a) (referring to executive director power to issue an accusation and forward a complaint for hearing); AS 18.80.112(b) (describing conditions under which the executive director may dismiss a complaint instead of forwarding it to a hearing).

superior court stated, the Commission "knows its resources best, and it is entitled to deference for its evaluation of them."

We next consider whether the Commission's dismissal under AS 18.80.112(b)(5) was so arbitrary and capricious as to offend due process.[16]  If the Commission cannot pursue all potentially actionable cases, it must make some difficult decisions; the statute defining the Commission's purpose describes a broad range of protected classes and forms of discrimination without mandating how the Commission should prioritize cases if resource considerations prevent it from addressing all of them.[17]

Unfortunately, the Commission failed to further delineate its reasoning for dismissing the case, or why continued prosecution would not represent the best use of its resources.  However, neither the Commission's authorizing statute nor the constitutional right to due process require the Commission to explicitly connect its ultimate decision not to issue an accusation to relevant evidence in the record.  Inferences are acceptable when applying deferential standards of review to administrative decisions.[18]  We can infer a range of legitimate reasons why the Commission might have concluded that further pursuit of Baker's complaint would not represent the best use of its resources.  We note that FedEx seems to have modified the policy to no longer treat married pilots differently than unmarried pilots for purposes of housing subsidies.  We note the internal arbitration findings that Baker had intentionally deceived FedEx without raising preliminary concerns about a discriminatory policy, and that said deception was

---

[16]     *See Yankee*, 407 P.3d at 463.

[17]     *See* AS 18.80.200(b).

[18]     *Cf. Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir. 1992) ("An award is arbitrary and capricious only if 'a ground for the arbitrator's decision cannot be inferred from the facts of the case.' " (quoting *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 1410, 1413 (11th Cir. 1990))).

actually the basis for his termination. Furthermore, we note that, presumably unlike some complainants seeking aid from the Commission, Baker had access to a lengthy union arbitration process, during which he was represented by counsel, and that he declined a settlement that would have allowed him to keep his job. We also note that Baker's ability to engage in further private enforcement of his discrimination claim was not foreclosed by the Commission's decision not to issue an accusation.

The circumstances of this case, when considered alongside the legislature's clear grant of prosecutorial discretion, prompt us to uphold the Commission's exercise of that discretion. The Commission's application of AS 18.80.112(b)(5) to Baker's case is not so arbitrary and capricious as to offend due process.

**B.    The Statute Vesting The Commission With Substantial Prosecutorial Discretion Does Not Offend Due Process.**

Baker asks us to consider whether AS 18.80.112(b)(5) and (6), as written, meet constitutional due process requirements. Alaska Statute 18.80.112(b) provides that "before the issuance of an accusation . . . the executive director may dismiss without prejudice a complaint if the executive director" makes any of seven determinations.

The decision to bring an enforcement matter, whether civil or criminal, is subject to agency discretion.[19] The United States Supreme Court grants extremely broad discretion to agency decisions not to prosecute or enforce.[20] We have previously endorsed this discretion, noting that "generally, courts decline to review executive-branch decisions *not* to prosecute an individual or *not* to enforce a law under

---

[19]    *Yankee*, 407 P.3d at 464.

[20]    *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("[The United States Supreme Court] has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.").

particular circumstances."[21]  And the legislature can properly expand or contract the prosecutorial discretion of agencies such as the Commission.[22]

Here, the challenged provisions simply grant the Commission discretion to dismiss complaints without prejudice based on considerations of agency resources and statutory purpose.[23]  We have previously accepted the constitutionality of the basic premise that the legislature can statutorily grant the Commission significant prosecutorial discretion.[24]  We conclude that AS 18.80.112(b)(5) and (6) meet constitutional due process requirements.

### C.    The Commission Did Not Err By Finding Baker's Retaliation Complaint Was Not Supported By Substantial Evidence.

Baker asserts that the Commission erred by finding there was not substantial evidence of illegal retaliation.  Alaska Statute 18.80.220(a)(4) provides that it is unlawful for an employer "to discharge, expel, or otherwise discriminate against a person because the person has opposed any practices forbidden under AS 18.80.200-18.80.280 or because the person has filed a complaint, testified, or assisted in a [Commission] proceeding."

---

[21]    *Yankee,* 407 P.3d at 464 (emphasis in original).

[22]    *See State, Dep't of Fish & Game, Sport Fish Div. v. Meyer*, 906 P.2d 1365, 1373-74 (Alaska 1995) (noting compulsory language of Commission's statutory mandate and observing while there might be valid reasons for the Commission staff to have the power to dismiss cases with individual merit but no widespread impact, the legislature would have to authorize that discretion), *superseded by statute*, Ch. 63, § 4, SLA 2006, *as recognized in Huit v. Ashwater Burns, Inc.*, 372 P.3d 904, 914 n.52 (Alaska 2016).

[23]    AS 18.80.112(b)(5) allows a dismissal based on a determination that "a hearing will not represent the best use of commission resources," and AS 18.80.112(b)(6) allows a dismissal based on a determination that "a hearing will not advance the purposes stated in AS 18.80.200."

[24]    *Meyer*, 906 P.2d at 1374.

The Commission's determination that Baker failed to produce substantial evidence is a question of law to which we apply our independent judgment.[25] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[26] To uphold the Commission's decision, we must conclude that a person of reasonable mind would not accept the evidence in the record as adequate to support a determination that FedEx retaliated against Baker.[27]

Baker filed his marital status discrimination complaint on October 12, 2011, *after* he was notified of an internal investigation of his potentially improper receipt of the housing allowance.[28] The FedEx activity to be considered is the activity occurring

---

[25] *See Rodriguez v. Alaska State Comm'n for Human Rights*, 354 P.3d 380, 385 (Alaska 2015).

[26] *Button v. Haines Borough*, 208 P.3d 194, 200 (Alaska 2009) (quoting *S. Anchorage Concerned Coal., Inc. v. Municipality of Anchorage Bd. of Adjustment*, 172 P.3d 774, 780 (Alaska 2007)).

[27] Although the Commission's most recent decision focused on three pieces of evidence highlighted by the superior court on remand, our review of the Commission's decision requires consideration of the entire record. *See Ross v. Alaska State Comm'n for Human Rights*, 447 P.3d 757, 764 (Alaska 2019) ("The substantial evidence test is highly deferential, but we still review the entire record to ensure that the evidence detracting from the agency's decision is not dramatically disproportionate to the evidence supporting it such that we cannot 'conscientiously' find the evidence to be 'substantial.' " (quoting *Pub. Safety Emps. Ass'n, AFSCME Local 803, AFL-CIO v. City of Fairbanks*, 420 P.3d 1243, 1248 (Alaska 2018))).

[28] We see no evidence that Baker raised allegations of marital status discrimination prior to FedEx's initiation of disciplinary proceedings. Baker contends his June 2011 note "tacitly questioned the policy's legitimacy," but this does not constitute a claim that would trigger anti-retaliation protections. Baker's note did not discuss marital status discrimination; instead he expressed his concerns about his wife's eligibility for the housing allowance and the lack of clarity in the residency guidelines. Baker's wife emailed FedEx alleging that the policy was discriminatory, but her first

(continued...)

between October 12, 2011 and March 27, 2012, when FedEx issued a notice of termination. Baker does not dispute that other pilots were also investigated. A reasonable mind would consider whether Baker received the same or materially similar treatment to other pilots under investigation, who did not file complaints, and weigh other evidence in that context.

Baker was afforded internal union arbitration protections, including a full hearing during which he was represented by counsel, and an appeal of the FedEx hearing officer's decision to a balanced arbitration panel. And despite having filed a complaint, Baker was offered the same settlement agreement as the other pilots. Baker did not agree to the settlement and was ultimately terminated. FedEx produced records from disciplinary proceedings of other pilots also accused of obtaining the housing allowance improperly. The record suggests other investigated pilots faced similarly detailed questioning, and other pilots who did not agree to the settlement were also terminated.

One piece of information could potentially be considered evidence of retaliation: the FedEx in-house counsel's statement to the ALPA union representative, in the course of the internal disciplinary process, that Baker's Commission complaint was "not helping him with FedEx, and, in fact, it's having the opposite effect." The counsel told the Commission that he did not recall making that statement, but that any such statement or sentiment would have related to FedEx's inability to progress in settlement discussions because of Baker's "litigious posture." The Commission determined that this did not constitute substantial evidence of retaliation, because ultimately Baker was offered the same settlement agreement as other pilots who had not

---

[28] (...continued) email was sent on September 26, 2011, five days after Baker received the notice of investigation. Therefore, like Baker, she first raised allegations of marital status discrimination after the investigative process had begun.

filed discrimination complaints, and those other pilots who did not accept the settlement were also terminated.

To determine whether a reasonable mind could consider this statement sufficient to support a conclusion of retaliation, we consider the situational context. Alaska Statute 18.80.220(a)(4) states that an employer may not "discharge, expel or otherwise discriminate against a person because the person has opposed [practices forbidden by the statute] or because the person has filed a complaint." This is consistent with the general premise that retaliation requires evidence of action taken to cause actual harm.[29] Even if the FedEx counsel made his statement intending to threaten Baker or out of anger that Baker had filed a complaint, the statement was not followed by harm that could constitute retaliation. Baker received the same procedural protections and the same disciplinary consequences as other similarly situated pilots. There is no evidence of a causal connection between his discharge and the filing of his complaint. In this context, the counsel's statement did not constitute substantial evidence of retaliation.

## V. CONCLUSION

We AFFIRM the superior court's decision upholding the Commission's dismissals of Baker's complaints.

---

[29] "Employment retaliation" is defined as "[a]n adverse employment *action* taken because an employee has engaged in a legally protected activity." Retaliation, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).